**Ex. 564–8 — Invalidity of 11,519,564 in view of Okamoto, Tsujino, Woolverton, Standing, and Kim**

This chart is subject to all reservations, objections, and disclaimers in Defendant's Invalidity Contentions and any amendment, supplement, or modification thereof, which are incorporated herein by reference in their entirety.

Defendant hereby contends that the asserted claims are invalid as anticipated and/or rendered obvious by JP2000277808 ("Okamoto"), US20100320898A1 ("Tsujino"), US5519596A ("Woolverton"), US20090008804A1 ("Standing"), and US20090009690A1 ("Kim") under 35 U.S.C. §§ 102 or 103.

- Okamoto was filed March 23, 1999 published/issued on October 6, 2000;

- Tsujino was filed filed May 20, 2010 published/issued on December 23, 2010

- Woolverton was filed May 16, 1995 published/issued on May 21, 1996

- Standing was filed September 10, 2008 published/issued on January 8, 2009, and

- Kim was filed March 27, 2008 and published/issued on January 8, 2009.

Therefore each of these references qualifies as prior art to the asserted '564 patent at least under one or more provision of AIA 35 U.S.C. § 102. [1]

The chart below discloses how Okamoto, Tsujino, Woolverton, Standing, and Kim discloses each limitation of the asserted claims, either expressly or inherently, and/or renders obvious each of the asserted claims.  The citations provided are exemplary and do not necessarily include each and every disclosure of the limitation in the references.  Defendant has endeavored to cite to the most relevant portions of the identified prior art, but other portions of the identified prior art may additionally disclose, either expressly or inherently, and/or render obvious one or more limitations of the asserted claims.  Thus, Defendant reserves the right to rely on: (1) uncited portions of the identified prior art; (2) other prior art not identified herein; (3) references that show the state of the art (irrespective of whether such references themselves qualify as prior art to the asserted patents); (4) factual testimony from the inventors or authors of the prior art references, or purveyors of prior art devices; and/or (5) expert testimony, to provide context to or aid in understanding the prior art and the state of the art at the time of the alleged inventions. The lack of a citation for an element should not be deemed an admission that the element is not disclosed or is not inherent in the reference.  When the chart indicates a particular reference discloses or embodies a limitation, the terms "discloses," "disclosed," "embodies," and "embodied" refer to explicit and/or inherent disclosure and/or obvious variations of the actual disclosure.  Further, for each claim limitation that Defendant contends is indefinite, if any, Defendant has used their best efforts to reasonably interpret the claims to fulfill their duties in charting the prior art references. Where Defendant cites to a particular drawing or figure in the accompanying charts, the citation encompasses the description of the drawing or figure, as well as any text associated with the drawing or figure.  Similarly, where Defendant cites to particular text concerning a drawing or figure, the citation encompasses that drawing or figure as well. Certain identified prior art inherently discloses features of the asserted claims.  Defendant reserves the right to rely on inherency to demonstrate the invalidity of the asserted claims.  Moreover, certain prior art references may inherently disclose certain features of the asserted claims as construed by Plaintiff.  Defendant may rely on cited or uncited portions of the prior art, other documents, factual testimony, and expert testimony to establish the inherency of certain features of the prior art to invalidate the asserted claims.

---

[1] Here, Defendant applies the alleged priority date Plaintiff asserted in its infringement contentions. This is not intended to be, nor should it be construed as, an admission that Plaintiff's alleged priority date is correct. Defendant reserves all rights to dispute that alleged priority date.

| Claims | Prior Art |
|---|---|
| 1[pre]. A light-emitting device, comprising: | Okamoto, Tsujino, Woolverton, Standing, and Kim expressly or inherently discloses "[a] light-emitting device." For example: Okamoto at Figure |

| | Tsujino at Fig. 6  To the extent that Okamoto, Tsujino, Woolverton, Standing, and Kim does not disclose any elements of this claim limitation, it would have been obvious to a person having ordinary skill in the art to combine, with the teachings of Okamoto, Tsujino, Woolverton, Standing, and Kim, those elements, as known to them or as disclosed by other prior art identified in the cover pleading. |
|---|---|
| [1a] a carrier having a top surface; | Okamoto, Tsujino, Woolverton, Standing, and Kim expressly or inherently discloses "a carrier having a top surface." For example: |

Okamoto at Figure



Tsujino at Fig. 6

FIG. 6

| | |
|---|---|
| | To the extent that Okamoto, Tsujino, Woolverton, Standing, and Kim does not disclose any elements of this claim limitation, it would have been obvious to a person having ordinary skill in the art to combine, with the teachings of Okamoto, Tsujino, Woolverton, Standing, and Kim, those elements, as known to them or as disclosed by other prior art identified in the cover pleading. |
| [1b] a first electrode strip disposed on the top surface, and having a first stripe and a plurality of first branches, the first stripe having a first extending direction different from a second extending direction of each of the plurality of first branches; | Okamoto, Tsujino, Woolverton, Standing, and Kim expressly or inherently discloses "a first electrode strip disposed on the top surface, and having a first stripe and a plurality of first branches, the first stripe having a first extending direction different from a second extending direction of each of the plurality of first branches." For example:<br><br>Okamoto at Figure<br><br> |

Tsujino at Fig. 6

Woolverton at Fig. 4b



Woolverton at 2:65–3:2

FIG. 4b shows module 50 after three dimensional shaping. Flexible joints 15 have been bent so that module 50 takes the form of a staircase. Each row of LED lamps 17 remains parallel to one another, and each row of LED lamps 17 directs their light in the same direction.

Standing at Fig. 1



FIG. 1

Standing at [0019]

Referring next to FIG. 2, a power semiconductor package 30 according to the preferred embodiment of the present invention includes a semiconductor die 10, and at least first conductive clip 32 electrically and mechanically coupled to first power electrode 12, and second conductive clip 34 electrically and mechanically coupled to second power electrode 14. Each conductive clip 32, 34 includes preferably a plurality of spaced fingers. Thus, first conductive clip 32 includes fingers 33, which are electrically and mechanically coupled to power fingers 16, and second conductive clip 34 includes fingers 35 which are electrically and mechanically coupled to fingers 18. Fingers 33 are integral with a first common connector 31, and fingers 35 are integral with a second common connector 37. Common connectors 31, 37 serve as external power leads. A device according to the preferred embodiment may further include a conductive clip electrically and mechanically coupled to each remaining electrode. Thus, a power semiconductor package according to the present invention further includes first control clip 36 electrically and mechanically coupled to first control electrode 24, second control clip 38 electrically and mechanically coupled to second control electrode 26, first current sense clip 40 electrically and mechanically coupled to first current sense electrode 28, and second current sense clip 42 electrically and mechanically coupled to

second current source electrode 30.

Kim at Fig. 3

FIG.3



Kim at [0051]

Each of the electron emission elements 20 includes first electrodes 22 spaced apart from each other by a predetermined interval along a first direction of the first substrate 12, e.g., the y-axis direction in the drawings, second electrodes 24 arranged between the first electrodes 22 along the first direction. Electron emission regions 26 are disposed on side surfaces of the first electrodes 22 facing the second electrodes 24, and formed at a lower height than the first electrodes 22. The first and second electrodes 22 and 24 are disposed generally parallel to each other.

Kim at [0053]

As seen in FIG. 3, a first connection electrode 221 is disposed at an end of each of the first electrodes 22 to form a first electrode set 222 together with the first electrodes 22. A second connection electrode 241 is disposed at an end of each of the second electrodes 24 to form a second electrode set 242 together with the second electrodes 24.

|  | To the extent that Okamoto, Tsujino, Woolverton, Standing, and Kim does not disclose any elements of this claim limitation, it would have been obvious to a person having ordinary skill in the art to combine, with the teachings of Okamoto, Tsujino, Woolverton, Standing, and Kim, those elements, as known to them or as disclosed by other prior art identified in the cover pleading. |
|---|---|
| [1c] a second electrode strip separated from the first electrode strip, disposed on the top surface, and having a second stripe and a plurality of second branches, the second stripe having a third extending direction different from a fourth extending direction of each of the plurality of second branches; and | Okamoto, Tsujino, Woolverton, Standing, and Kim expressly or inherently discloses "a second electrode strip separated from the first electrode strip, disposed on the top surface, and having a second stripe and a plurality of second branches, the second stripe having a third extending direction different from a fourth extending direction of each of the plurality of second branches." For example: Okamoto at Figure  |

Tsujino at Fig. 6

Woolverton at Fig. 4b



Woolverton at 2:65–3:2

FIG. 4b shows module 50 after three dimensional shaping. Flexible joints 15 have been bent so that module 50 takes the form of a staircase. Each row of LED lamps 17 remains parallel to one another, and each row of LED lamps 17 directs their light in the same direction.

Standing at Fig. 1



FIG. 1

Standing at [0019]

Referring next to FIG. 2, a power semiconductor package 30 according to the preferred embodiment of the present invention includes a semiconductor die 10, and at least first conductive clip 32 electrically and mechanically coupled to first power electrode 12, and second conductive clip 34 electrically and mechanically coupled to second power electrode 14. Each conductive clip 32, 34 includes preferably a plurality of spaced fingers. Thus, first conductive clip 32 includes fingers 33, which are electrically and mechanically coupled to power fingers 16, and second conductive clip 34 includes fingers 35 which are electrically and mechanically coupled to fingers 18. Fingers 33 are integral with a first common connector 31, and fingers 35 are integral with a second common connector 37. Common connectors 31, 37 serve as external power leads. A device according to the preferred embodiment may further include a conductive clip electrically and mechanically coupled to each remaining electrode. Thus, a power semiconductor package according to the present invention further includes first control clip 36 electrically and mechanically coupled to first control electrode 24, second control clip 38 electrically and mechanically coupled to second control electrode 26, first current sense clip 40 electrically and mechanically coupled to first current sense electrode 28, and second current sense clip 42 electrically and mechanically coupled to

second current source electrode 30.

Kim at Fig. 3

FIG.3



Kim at [0051]

Each of the electron emission elements 20 includes first electrodes 22 spaced apart from each other by a predetermined interval along a first direction of the first substrate 12, e.g., the y-axis direction in the drawings, second electrodes 24 arranged between the first electrodes 22 along the first direction. Electron emission regions 26 are disposed on side surfaces of the first electrodes 22 facing the second electrodes 24, and formed at a lower height than the first electrodes 22. The first and second electrodes 22 and 24 are disposed generally parallel to each other.

Kim at [0053]

As seen in FIG. 3, a first connection electrode 221 is disposed at an end of each of the first electrodes 22 to form a first electrode set 222 together with the first electrodes 22. A second connection electrode 241 is disposed at an end of each of the second electrodes 24 to form a second electrode set 242 together with the second electrodes 24.

| | To the extent that Okamoto, Tsujino, Woolverton, Standing, and Kim does not disclose any elements of this claim limitation, it would have been obvious to a person having ordinary skill in the art to combine, with the teachings of Okamoto, Tsujino, Woolverton, Standing, and Kim, those elements, as known to them or as disclosed by other prior art identified in the cover pleading. |
|---|---|
| [1d] a plurality of first light-emitting units disposed on the top surface, each of the plurality of first light-emitting units being connected to one of the plurality of first branches and one of the plurality of second branches. | Okamoto, Tsujino, Woolverton, Standing, and Kim expressly or inherently discloses "a plurality of first light-emitting units disposed on the top surface, each of the plurality of first light-emitting units being connected to one of the plurality of first branches and one of the plurality of second branches." For example:<br><br>Okamoto at Figure<br><br><br><br>To the extent that Okamoto, Tsujino, Woolverton, Standing, and Kim does not disclose any elements of this claim limitation, it would have been obvious to a person having ordinary skill in the art to combine, with the teachings of Okamoto, Tsujino, Woolverton, Standing, and Kim, those elements, as known to them or as disclosed by other prior art identified in the cover pleading. |
| 2. The light-emitting device of claim 1, wherein the first electrode strip and the second electrode strip are substantially parallel to each other. | Okamoto, Tsujino, Woolverton, Standing, and Kim expressly or inherently discloses "[t]he light-emitting device of claim 1, wherein the first electrode strip and the second electrode strip are substantially parallel to each other." For example: |

| | Okamoto at Figure |
|---|---|
| |  |
| | To the extent that Okamoto, Tsujino, Woolverton, Standing, and Kim does not disclose any elements of this claim limitation, it would have been obvious to a person having ordinary skill in the art to combine, with the teachings of Okamoto, Tsujino, Woolverton, Standing, and Kim, those elements, as known to them or as disclosed by other prior art identified in the cover pleading. |
| 3. The light-emitting device of claim 1, wherein the plurality of first branches and the plurality of second branches are in an interlaced arrangement. | Okamoto, Tsujino, Woolverton, Standing, and Kim expressly or inherently discloses "[t]he light-emitting device of claim 1, wherein the plurality of first branches and the plurality of second branches are in an interlaced arrangement." For example: <br><br> *See* Claim 1. <br><br> To the extent that Okamoto, Tsujino, Woolverton, Standing, and Kim does not disclose any elements of this claim limitation, it would have been obvious to a person having ordinary skill in the art to combine, with the teachings of Okamoto, Tsujino, Woolverton, Standing, and Kim, those elements, as known to them or as disclosed by other prior art identified in the cover pleading. |
| 4. The light-emitting device of claim 1, further comprising a third electrode strip electrically connected to the second electrode | Okamoto, Tsujino, Woolverton, Standing, and Kim expressly or inherently discloses "[t]he light-emitting device of claim 1, further comprising a third electrode strip electrically connected to the second electrode strip |

| | |
|---|---|
| strip and comprising a third stripe and a plurality of third branches, wherein the third stripe has a fifth extending direction different from a sixth extending direction of each of the plurality of third branches. | and comprising a third stripe and a plurality of third branches, wherein the third stripe has a fifth extending direction different from a sixth extending direction of each of the plurality of third branches." For example: *See* Claim 1. To the extent that Okamoto, Tsujino, Woolverton, Standing, and Kim does not disclose any elements of this claim limitation, it would have been obvious to a person having ordinary skill in the art to combine, with the teachings of Okamoto, Tsujino, Woolverton, Standing, and Kim, those elements, as known to them or as disclosed by other prior art identified in the cover pleading. |
| 5. The light-emitting device of claim 4, further comprising a fourth electrode strip separated from the third electrode strip and comprising a fourth stripe and a plurality of fourth branches, wherein the fourth stripe has a seventh extending direction different from an eighth extending direction of each of the plurality of fourth branches. | Okamoto, Tsujino, Woolverton, Standing, and Kim expressly or inherently discloses "[t]he light-emitting device of claim 4, further comprising a fourth electrode strip separated from the third electrode strip and comprising a fourth stripe and a plurality of fourth branches, wherein the fourth stripe has a seventh extending direction different from an eighth extending direction of each of the plurality of fourth branches." For example: *See* Claim 1. To the extent that Okamoto, Tsujino, Woolverton, Standing, and Kim does not disclose any elements of this claim limitation, it would have been obvious to a person having ordinary skill in the art to combine, with the teachings of Okamoto, Tsujino, Woolverton, Standing, and Kim, those elements, as known to them or as disclosed by other prior art identified in the cover pleading. |
| 6. The light-emitting device of claim 5, further comprising a plurality of second light-emitting units, each of the plurality of second light-emitting units being connected to one of the plurality of third branches and one of the plurality of fourth branches. | Okamoto, Tsujino, Woolverton, Standing, and Kim expressly or inherently discloses "[t]he light-emitting device of claim 5, further comprising a plurality of second light-emitting units, each of the plurality of second light-emitting units being connected to one of the plurality of third branches and one of the plurality of fourth branches." For example: *See* Claim 1. To the extent that Okamoto, Tsujino, Woolverton, Standing, and Kim does not disclose any elements of this claim limitation, it would have been obvious to a person having ordinary skill in the art to combine, with the teachings of Okamoto, Tsujino, Woolverton, Standing, and Kim, those elements, as known to them or as disclosed by other prior art identified in the cover pleading. |
| 7. The light-emitting device of claim 4, further comprising a conductive material connecting the third electrode strip and the second electrode strip. | Okamoto, Tsujino, Woolverton, Standing, and Kim expressly or inherently discloses "[t]he light-emitting device of claim 4, further comprising a conductive material connecting the third electrode strip and the second electrode strip." For example: *See* Claim 1. |

| | To the extent that Okamoto, Tsujino, Woolverton, Standing, and Kim does not disclose any elements of this claim limitation, it would have been obvious to a person having ordinary skill in the art to combine, with the teachings of Okamoto, Tsujino, Woolverton, Standing, and Kim, those elements, as known to them or as disclosed by other prior art identified in the cover pleading. |
|---|---|
| 8. The light-emitting device of claim 1, wherein at least one of the plurality of first light-emitting units is a flip-chip. | Okamoto, Tsujino, Woolverton, Standing, and Kim expressly or inherently discloses "[t]he light-emitting device of claim 1, wherein at least one of the plurality of first light-emitting units is a flip-chip." For example: *See* Claim 1. To the extent that Okamoto, Tsujino, Woolverton, Standing, and Kim does not disclose any elements of this claim limitation, it would have been obvious to a person having ordinary skill in the art to combine, with the teachings of Okamoto, Tsujino, Woolverton, Standing, and Kim, those elements, as known to them or as disclosed by other prior art identified in the cover pleading. |
| 9. The light-emitting device of claim 1, further comprising a transparent body covering the plurality of first light-emitting units. | Okamoto, Tsujino, Woolverton, Standing, and Kim expressly or inherently discloses "[t]he light-emitting device of claim 1, further comprising a transparent body covering the plurality of first light-emitting units." For example: *See* Claim 1. To the extent that Okamoto, Tsujino, Woolverton, Standing, and Kim does not disclose any elements of this claim limitation, it would have been obvious to a person having ordinary skill in the art to combine, with the teachings of Okamoto, Tsujino, Woolverton, Standing, and Kim, those elements, as known to them or as disclosed by other prior art identified in the cover pleading. |
| 10. The light-emitting device of claim 9, wherein the transparent body comprises a wavelength conversion layer. | Okamoto, Tsujino, Woolverton, Standing, and Kim expressly or inherently discloses "[t]he light-emitting device of claim 9, wherein the transparent body comprises a wavelength conversion layer." For example: *See* Claim 1. To the extent that Okamoto, Tsujino, Woolverton, Standing, and Kim does not disclose any elements of this claim limitation, it would have been obvious to a person having ordinary skill in the art to combine, with the teachings of Okamoto, Tsujino, Woolverton, Standing, and Kim, those elements, as known to them or as disclosed by other prior art identified in the cover pleading. |

Page 16 of 16